**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 38467**

| | |
|---|---|
| NICK HESTEAD, | ) |
| | ) Boise, February 2012 Term |
|    Plaintiff-Respondent-Cross Appellant, | ) |
| | ) 2012 Opinion No. 48 |
| v. | ) |
| | ) Filed: March 5, 2012 |
| CNA SUPPLY dba WESTERN SURETY | ) |
| COMPANY, | ) Stephen W. Kenyon, Clerk |
| | ) |
|    Defendant-Appellant-Cross Respondent. | ) |
| _____ | ) |

Appeal from the District Court of the Third District Court of the State of Idaho, Canyon County. Hon. Susan E. Wiebe, District Judge.

The judgment of the district court is <u>reversed</u>. Neither party is awarded attorney's fees. Costs are awarded to appellant.

Elam & Burke, P.A., Boise, for appellant. Joshua S. Evett argued.

John L. Gannon, Boise, for respondent.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

In April and June of 2008, Best of the Best Auto Sales, Inc. ("Best of the Best"),[1] an Idaho corporation, purchased seven vehicles from Dealers Auto Auction of Idaho ("Dealers") and Brasher's Idaho Auto Auction ("Brasher") with checks that were returned for insufficient funds. As a result, Dealers and Brasher refused to provide Best of the Best with the titles to the vehicles. Best of the Best then sold the vehicles to Idaho consumers without providing them with titles.

Dealers and Brasher filed claims with CNA Surety d/b/a Western Surety Company (hereinafter referred to collectively as "Western Surety"), which acted as a surety for a "$20,000

---

[1] Best of the Best was referred to as "Best of the Best Autom Sales, Inc." in the Dealer Bond. It was referred to as "Best of the Best Auto Sales, Inc." in subsequent exhibits and in the Articles of Incorporation. There is reference to a name change in the Rider to the Dealer Bond. In the Rider, Best of the Best is referred to as "Best of the Best Automsales, Inc."

Vehicle/Vessel Dealer Bond" ("Dealer Bond"). Best of the Best was the principal. Upon Best of the Best's failure to provide evidence or defenses for Dealers' and Brasher's claims, Western Surety alleges that it lawfully settled those claims in good faith pursuant to I.C. § 41-1839(3), upon the condition that the consumers received their titles, even though they were not based on final judgments.

Thereafter, Nick Hestead ("Hestead") submitted his claim, which was based on a final judgment. Hestead's claim involved fraud and fraudulent representation concerning a separate vehicle that Hestead purchased from Best of the Best that was previously branded a lemon in California. Western Surety responded by asserting that the Dealer Bond was exhausted.

Hestead contends that the plain meaning of I.C. § 49-1610(4) provides that his claim should be given priority because it was submitted thirty days after a final judgment was entered, unlike Dealers' and Brasher's claims. Western Surety asserts that the plain meaning of I.C. § 41-1839(3) permits sureties to settle Dealer Bond claims in good faith.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In order to operate a licensed vehicle dealership in Idaho, a dealer must obtain a $20,000 Dealer Bond pursuant to I.C. § 49-1608(1)(a). Dealer Bond claims are not addressed by the Idaho Transportation Department ("the Department"); instead, it merely lists the claims in the Dealer Operations Database and forwards them to the surety for prompt response. The Department does not express its opinion as to the validity of a Dealer Bond claim.

Claims based on final judgments are infrequent. In fact, Daryl Marler ("Marler"), Dealer Operations Program Supervisor with the Department, admits that over the last five years, he can only recall forwarding three or four claims based on final judgments for claim processing and upwards of sixty to eighty consumer claims that were not based on final judgments.

Western Surety is a surety company that issues Dealer Bonds in order to compensate claimants pursuant to I.C. § 49-1610. Western Surety's claims process often involves settling undisputed claims, regardless whether the claimant has obtained a final judgment. The Department has never expressly told Western Surety that it may not engage in settlements. Instead, the Department only requires that it be informed of all settlements.

Upon receiving a claim forwarded by the Department, Western Surety notifies the principal of the claim and then asks the principal to provide its defenses. If the principal's liability is undisputed or the principal does not provide any adequate defenses, Western Surety

determines the amount of just compensation due and tenders a settlement. If the claim is disputed and the claimant does not provide adequate evidence establishing a violation of I.C. § 49-1610, Western Surety notifies the claimant that he or she must obtain a final judgment in order to receive payment. Western Surety engages in this claims process because it contends that claims involving consumers who do not receive title require quick resolution due to the problems associated with vehicle insurance, vehicle registration, and perfection of liens. Furthermore, Western Surety contends that it is against the Department's policy to force claimants who have not received titles to file suit at their own expense in order to prove what everyone already knows, i.e., that the claimant paid for a vehicle without receiving title. Western Surety also contends that it settles undisputed Dealer Bond claims because failure to promptly respond to such claims may subject it to attorney's fees pursuant to I.C. § 41-1839(1).

Best of the Best was incorporated on November 12, 2004. Morgan Ririe ("Ririe") and Ron Zechman ("Zechman") were listed as the incorporators. Ririe obtained a Dealer Bond from Western Surety on November 19, 2004. The Dealer Bond provides that Western Surety and Best of the Best are "jointly and severally held and firmly bound unto the state of Idaho to indemnify persons, firms, or corporations for loss suffered by reason of violation of the conditions hereinafter contained." The Dealer Bond also asserts that "the Principal shall not practice any fraud, make any fraudulent representation or violate any of the provisions of Chapter 16 Title 49 Idaho Code or rules and regulations promulgated by the [Department]." The aggregate liability of Western Surety is limited to the amount of the Dealer Bond, in this case $20,000, regardless of the number of years the bond remains in effect or the number of claims that are made.

Best of the Best purchased seven vehicles from Brasher's and Dealers in April and June of 2008. Both companies withheld the titles to the vehicles after Best of the Best's checks were returned for insufficient funds. Thereafter, Best of the Best sold the vehicles to consumers without providing titles upon their sale contrary to I.C. § 49-502(1). The Dealer Bond was cancelled on November 28, 2008, pursuant to Best of the Best's written request. Best of the Best was later dissolved by the Idaho Secretary of State on February 5, 2009.

Dealers submitted its claim to Western Surety on September 19, 2008, attaching a purchase order issued to Best of the Best as well as a statement showing a returned check endorsed by Best of the Best. The claim requests payment pursuant to I.C. § 49-1610, contending that Best of the Best engaged in fraud by continued payment with checks that were

3

returned for insufficient funds. Western Surety requested further support for Dealers' fraud claim. In a subsequent letter, it stated that "[i]n the event that [Dealers is] unable to present [Western Surety] with evidence to sufficiently establish fraud or fraudulent representation, [Dealers] can also establish the validity of [its] claim by providing [Western Surety] with a certified copy of a final judgment."

On October 16, 2008, Western Surety also notified Best of the Best of Dealers' claim by letter and requested that Best of the Best provide any defenses. In the letter, Western Surety stated that if Best of the Best provided no response by November 6, 2008, "[it] may need to assume the correctness of this claim, arrange a settlement to the extent of our liability, and then look to [Best of the Best] under the terms of the indemnity agreement for full and immediate reimbursement."

Thereafter, Brasher's claim was forwarded to Western Surety by the Department on November 13, 2008. Brasher's claim sought $9,360 for three vehicles that Best of the Best purchased from Brasher with checks that were returned for insufficient funds in April of 2008. Western Surety responded on January 9, 2009, requesting further support for the fraud claim and asserting that if Brasher was unable to establish its claim to Western Surety's satisfaction, it must provide a certified copy of a final judgment. On January 9, 2009, Western Surety notified Best of the Best and Ririe of Brasher's claim and requested that Best of the Best provide any defenses and a full explanation of the events leading up to the claim by January 29, 2009, or else Western Surety may need to assume the correctness of the claim and arrange a settlement.

On March 11, 2009, upon never receiving a response from Best of the Best, Western Surety issued its Final Release and Assignment in the amount of $9,360 to Brasher on March 11, 2009. The Final Release and Assignment required the release of three certificates of title. Western Surety also sent Ririe a letter, stating that it made a payment to Brasher under the terms of the Dealer Bond because Best of the Best "failed to respond to the letter dated January 9, 2009, and did not provide defenses."

On June 12, 2009, Western Surety paid $10,640 to Dealers for release of four certificates of title upon Dealers signing a Final Release and Assignment. It later sent a letter to Ririe on July 23, 2009, asserting that the Dealer Bond had been exhausted because Best of the Best "failed to provide the surety with a bona fide defense." It also sent a letter to the Department

4

stating that it had issued the checks and exhausted the Dealer Bond. Best of the Best and the Department never disputed the settlements.

On June 8, 2007, Hestead purchased a truck from Best of the Best. After trying to trade the vehicle in for a different model, he learned that the vehicle's title was branded a lemon in California. As a result, Hestead filed suit against Ron Zechman and Best of the Best on September 2, 2008, alleging fraud and fraudulent representation.

On April 8, 2010, Hestead submitted his claim to Western Surety for $16,979 in damages along with $7,525 in attorney's fees and $503.49 in costs with an attached copy of Judgment entered against Ron Zechman that was filed on March 9, 2010. Hestead asserted that his claim should be given priority because it was based on a final judgment pursuant to I.C. § 49-1610(4). On April 19, 2010, Western Surety sent a letter to Hestead asserting that the bond was exhausted and that Western Surety may issue settlements, regardless of whether or not a claimant obtained a final judgment.

On June 7, 2010, Hestead sent another claim, asserting that he had obtained a final judgment, which was filed on May 6, 2010, against Best of the Best in the amount of $25,007.49. He attached a copy of Judgment and reaffirmed his position with regard to the priority of his claim. As yet, neither Zechman nor Best of the Best have made payment pursuant to the final judgment. The Department did not take a position as to whether Hestead's claim should be given priority.

Hestead filed his Complaint on June 21, 2010, alleging that his claim should be given priority over Dealers' and Brasher's claims because he submitted a copy of a final judgment in accordance with I.C. § 49-1610(4). Western Surety filed its Answer on June 30, 2010, asserting that the Dealer Bond was exhausted because it lawfully settled Dealers' and Brasher's undisputed claims in good faith pursuant to I.C. § 41-1839(3). Hestead then filed his Motion for Summary Judgment on October 13, 2010. Thereafter, the district court filed its Judgment on December 16, 2010, which granted Hestead's Motion for Summary Judgment and awarded $12,500 in damages.[2] Western Surety timely filed its Notice of Appeal on January 21, 2011. Hestead filed his Notice of Cross-Appeal on February 11, 2011, asserting that the district court erred by not awarding as damages $750 for the vehicle's sales tax and $3,729 for the interest that

---

[2] The district court did not file a separate Memorandum Decision and Order explaining its rationale for the Judgment. The only record of the district court's rationale is found in the December 10, 2010 Transcript on Appeal, which essentially asserts that the plain meaning of I.C. § 49-1610(4) requires a final judgment.

Hestead paid to Simplot Employees Credit Union in order to finance the vehicle. Western Surety thereafter filed its Amended Notice of Appeal on March 2, 2011.

### III. ISSUES ON APPEAL

**1.**     Whether the district court erred by granting Hestead's Motion for Summary Judgment?

**2.**     Whether the district court erred by not awarding the sales tax and interest as damages pursuant to I.C. § 49-1610?

**3.**     Whether Western Surety is entitled to attorney's fees on appeal?

**4.**     Whether Hestead is entitled to attorney's fees on appeal?

### IV. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). "If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review." *Watson v. Weick*, 141 Idaho 500, 504, 112 P.3d 788, 792 (2005).

### V. ANALYSIS

**A.     The District Court Erred when It Granted Hestead's Motion for Summary Judgment**

Western Surety contends that the good faith standard contained in I.C. § 41-1839(3) governs a surety's payments of Dealer Bond claims pursuant to I.C. § 49-1610. It further contends that I.C. § 41-1839(3) and I.C. § 49-1610(4) should be construed in pari materia because construing the statutes separately forces claimants with undisputed claims to pursue final judgments and subjects sureties to attorney's fees pursuant to I.C. § 41-1839(1). In the alternative, Western Surety argues that I.C. § 49-1610 and the terms of the Dealer Bond do not permit Hestead to collaterally attack its good faith payments and subject it to liability beyond the value of the bond. Furthermore, Western Surety contends that it substantially complied with I.C. § 49-1610.

This Court exercises free review over the interpretation of a statute. *Doe v. Boy Scouts of Am.*, 148 Idaho 427, 430, 224 P.3d 494, 497 (2009). Judicial interpretation of a statute begins with an examination of the statute's literal words. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999). "This Court interprets statutes according to their plain, express meaning and resorts to judicial construction only if the statute is ambiguous, incomplete, absurd, or

6

arguably in conflict with other laws." *Arel v. T & L Enter., Inc.*, 146 Idaho 29, 32, 189 P.3d 1149, 1152 (2008). When this Court must engage in statutory construction, it has the duty to give effect to legislative intent. *State v. Rhode*, 133 Idaho 459, 462, 988 P.2d 685, 688 (1999). "To ascertain the intent of the legislature, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute and its legislative history." *Id.*

Idaho Code section 49-1610(1) provides for a general cause of action for fraud or fraudulent representation perpetrated by licensed dealers. It reads in relevant part:

> If any person shall suffer any loss or damage by reason of any fraud practiced on him or fraudulent representation made to him by a licensed dealer or one (1) of the dealer's salesmen acting for the dealer, in his behalf or within the scope of the employment of salesman, or shall suffer any loss or damage by reason of the violation by the dealer or salesman of any of the provisions of this chapter, or chapter 5, title 49, Idaho Code, or section 49-1418, Idaho Code, or chapter 6, title 48, Idaho Code, or any applicable rule or regulation of the board, or federal odometer law or regulation, that person shall have a right of action against the dealer and his salesman.

By its plain language, a claimant may rely solely on I.C. § 49-1610(1) when he or she asserts a Dealer Bond claim. Nothing in the plain language of I.C. § 49-1610 prohibits sureties from settling undisputed claims.

Idaho Code section 49-1610(4) provides a specific process for claimants with disputed claims who seek final judgments to file their claims. Idaho Code section 49-1610(4) does not say that every claimant must obtain a final judgment. This is apparent in the first sentence of I.C. § 49-1610(4), which qualifies it by asserting that "[w]henever any person is awarded a final judgment in a court of competent jurisdiction in the state of Idaho for any loss or damage by reason of the violation by such dealer or salesman . . . ." Thus, these subsections provide separate and distinct methods of submitting Dealer Bond claims. Hestead relied on I.C. § 49-1610(4) by pursuing his disputed claim to a final judgment. Western Surety's settlements with Dealers' and Brasher's undisputed claims are governed by I.C. § 49-1610(1), which does not prohibit such settlements.

Furthermore, sureties engage in settlements with claimants who present undisputed claims because the failure to promptly respond to such claims may subject them to attorney's fees pursuant to I.C. § 41-1839(1). Idaho Code section 41-1839(3) provides a process for sureties to settle undisputed claims in good faith so as to avoid the classification of such

7

payments as volunteer payments and to avoid liability for claims of attorney's fees pursuant to I.C. § 41-1839(1), so long as the claimant notifies the surety of his or her claim within sixty days prior to the action. Applying Hestead's approach, which reads I.C. § 41-1839(3) in isolation of I.C. § 49-1610 and essentially requires all claimants to pursue their disputed or undisputed claims to a final judgment, ignores the plain meaning of those statutes. It would also clog up the court system with unnecessary litigation and subject innocent consumers to needless court costs and attorney's fees. Surely, this must not have been the intent of the Legislature. By its plain meaning, I.C. § 41-1839(3) was intended to hasten the resolution of such claims and afford sureties a degree of discretion in settling undisputed claims. Furthermore, applying Hestead's approach would essentially nullify the good faith standard contained within I.C. § 41-1839(3), and would call into question the legality of prior Dealer Bond claim settlements.

Hestead's argument that Western Surety's payments of Dealers' and Brasher's claims were volunteer payments is unconvincing. As mentioned before, the payments were lawfully made in good faith pursuant to I.C. § 49-1610(1) and I.C. § 41-1839(3) because Dealers' and Brasher's claims were undisputed and supported by competent evidence.

**B.      This Court Does Not Need to Address the Issue of Whether the District Court Erred when It Declined to Award the Sales Tax and Vehicle Loan Interest as Damages**

Because the Dealer Bond was lawfully exhausted pursuant to I.C. § 49-1610(1) and I.C. § 41-1839(3), this Court need not address this issue.

**C.      Western Surety Is Not Entitled to Attorney's Fees on Appeal**

Western Surety asserts that it is entitled to attorney's fees on appeal pursuant to I.C. § 41-1839(4). Idaho Code section 41-1839(4) and Idaho Code section 12-123 "provide the exclusive remedy for the award of statutory attorney's fees in all actions or arbitrations between insureds and insurers involving disputes arising under policies of insurance." Western Surety is not entitled to attorney's fees on appeal because this action does not involve an action between an insurer and an insured.

**D.      Hestead Is Not Entitled to Attorney's Fees on Appeal**

Hestead asserts that he is entitled to attorney's fees on appeal pursuant to I.C. § 41-1839(1), (3), and (4). Idaho Code section 41-1839(1) does not apply because it awards attorney's fees for a surety's failure "to pay to the person entitled thereto the amount justly due under such policy [for a period of thirty days after proof of loss has been furnished] . . . ." Because Western Surety lawfully exhausted the Dealer Bond, there was no amount "justly due"

8

to Hestead under the terms of the Dealer Bond.  Idaho Code section 41-1839(3) is also inapplicable because it does not provide for attorney's fees on appeal.  Finally, Hestead is not entitled to attorney's fees pursuant to I.C. § 41-1839(4) because, as mentioned in Section C, this action does not involve an action between an insurer and insured.

## VI. CONCLUSION

The judgment of the district court is reversed.  Neither party is entitled to attorney's fees on appeal.  Costs are awarded to Western Surety.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON CONCUR.